## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| STACY B. FERRARA | ) | **Chapter 7** |
| *Trustee* | ) | **BK No. 18-10071** |
| | ) | |
| VS. | ) | AP Case No. 19-01010 |
| | ) | |
| DAVID W. WAGNER | ) | |
| *Debtor/Defendant* | | |

### FIRST AMENDED ANSWER OF DEFENDANT DAVID WAGNER

Preliminary Statement

The Debtor/Defendant ("Debtor") asserts that the Debtor has gone well above and beyond his duties to provide hundreds of pages of data to the Trustee/Plaintiff ("Trustee" or "Plaintiff"). The Debtor has devoted hundreds of hours compiling information for the Trustee, including preparing highly detailed spreadsheets of each and every transaction from each and every bank account and company reasonably related to his case. The Debtor's financial history is unmistakably complex. However, his disclosures and his voluntary and voluminous assistance to the Trustee in determining his financial history speak for themselves. Moreover, the Plaintiff seeks to conflate all of the transactions by and between the Debtor and any company he has been associated with, giving a false picture of the Debtor's personal financial situation. It is neither accurate nor fair to the Debtor to demand that he disclose transactions at a corporate level on the theory that the Debtor is the alter ego of these corporations and therefore all such transactions must a priori be disclosed. From the beginning of the case the Debtor notified the trustee that he was at a disadvantage as he did not have all of his bank accounts, but as soon as he could get them he would thoroughly summarize them, and all transactions, for the trustee and for himself. He has done all that he said he would do, and significantly more.

It is inarguable that the Debtor at the time of his case he was virtually penniless, and remains in very difficult financial circumstances to this very day.  He deserves a fresh start like any other Debtor, and should not be penalized merely because he comes to the bankruptcy court after the failure of a complex and wide-ranging start up effort, which championed a novel software and hardware solution to the scourge of surgical errors that are all too common in operating rooms. The Debtor's vision was large and he dreamed big. When he fell, he fell big. But the mere fact that his vision created a large and sprawling financial structure that is not simple to describe should not deprive him of a future where he can, hopefully, continue to lend his skills to benefit the medical community. Accordingly, none of the

allegations in the complaint rise to the level of being sufficiently relevant or meaningful to deny the Debtor a discharge.

All schedules referred to herein may be found in the Bankruptcy Court docket, Docket numbers 15, 106, and 309.

## ANSWER

Defendant David W. Wagner ("Wagner" or "Debtor"), states his Answer to Plaintiff Stacy B. Ferrara's ("Trustee") Complaint, as follows:

## FIRST DEFENSE

1. Allegation: Plaintiff, Stacy B. Ferrara is the duly appointed Chapter 7 Trustee in this matter ("Trustee").
   Answer: Admitted

2. Allegation: Defendant, David W. Wagner (the "Debtor" or "Mr. Wagner"), is the Debtor before this Court in the above-captioned case, having filed a Chapter 7 petition for relief with this Court on January 17, 2018 ("Filing Date").
Jurisdiction
   Answer: Admitted

3. Allegation: This adversary proceeding is within this Court's jurisdiction pursuant to the provisions of 28 U.S.C. §§157 and 1334 and the provisions of Local Rule LR Gen 109 (Bankruptcy) of the United States District Court of Rhode Island.
   Answer: Admitted

4. Allegation: This is a core proceeding under 28 U.S.C. § 157 (b)(2)(J).
   Answer: Admitted

5. Allegation: As of the date of this Complaint the Debtor has not been granted a discharge.
   Answer: Admitted

6. Allegation: The Plaintiff objects to the Debtor's discharge under the Bankruptcy Code §§727 (a)(3) and (4). The Trustee reserves her right to supplement or amend this Complaint to provide further bases for objecting to the Debtor's discharge, including, without limitation, based on what is disclosed, produced or not produced in responses to continued requests for information made to or to be made to the Debtor or third parties.
   Answer: Admitted that the Plaintiff objects to the Debtor's discharge under §727. Debtor also reserves his right to supplement or amend his answers as is appropriate.

7. Allegation: This proceeding was commenced on the Filing Date by Debtor's filing, under oath, a Chapter 7 Petition with this Court, pro se, without any schedules or statement of affairs (the "Petition") ("Doc 1").
   Answer: Admitted

8. Allegation: Debtor thereafter filed, under oath, an Application to Have Filing Fee Waived on
January 17, 2017 (the "Waiver") ("Doc 6"), which was denied.
     Answer: Admitted

9. Allegation: In Doc 6, Debtor claimed, among other things, he was unable to pay the Ch 7
filing fee within 120 days of the Filing Date because he was unemployed, had no
income and did not expect his family's income would increase by 10% over the next
6 months, had only $20 cash, had monthly expenses of $8140.16, had no one who
regularly paid any of his monthly expenses, had no other real estate and no other
assets.
     Answer: Admitted that the application speaks for itself.

10. Allegation: Debtor filed his schedules and statement of affairs, under oath, on January 31,
2018 ("Schedules" and "SOA") ("Doc No.15") and his amended schedules and
amended statement of affairs, under oath, on November 1, 2018 ("Amended
Schedules and Amended SOA") ("Doc 106").
     Answer: Admitted

     Amended Answer: Admitted, and also his second amended schedules and second amended
     statement of affairs, under oath, on May 23, 2019 ("Second Amended Schedules and Second
     Amended SOFA") ("Doc # 309") along with Doc No. 15 and Doc 106, collectively (the
     "Aggregate Filings").

11. Allegation: Debtor stated, in his SOA, among other things, that his income for 2018 was $0,
his total income for 2017 was from wages in the amount of $729.96, he had no
income from business operations in 2017 and his income from business operations in
2016 was $163,900.
     Answer: Denied. The application was amended on November 1, 2018

     Amended Answer: The answer was amended on November 1, 2018 and again on May 23,
     2019.  The Aggregate Filings accurately reflect Debtor's negative reported personal income in
     2017 and 2016, as well as providing further information on Debtor's gross cash receipts from
     businesses for both years before deducting business expenses and business losses which resulted
     in negative reported personal income.

12. Allegation: Debtor disclosed in his SOA that he had no other income, from any other sources,
for the period 2016 through the Filing Date.
     Answer: Admitted that the application speaks for itself

     Amended Answer: Admitted that the answer, along with the Aggregate Filings, speak for
     themselves and that the Aggregate Filings, with all detailed attachments, provide all necessary
     and appropriate disclosures.

13. Allegation: Debtor disclosed in his SOA, Q 7, that he made no payments in the year prior to
the Filing Date to any insiders.
     Answer: Admitted

     Amended Answer: Admitted that the Aggregate Filings, with all detailed attachments, provide all
     necessary and appropriate disclosures.

14. Allegation: Debtor disclosed in his SOA, Q 8, that he made no payments or transferred any property in the year prior to his Filing Date on account of a debt that benefited an insider.

    Answer: Admitted

    Amended Answer: Admitted that the Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.

15. Allegation: Debtor disclosed in his SOA, Q 13, that within 2 years prior to the Filing Date he did not give any gifts, with a total value of more than $600.00, to any person.

    Answer: Denied. The application was amended on November 1, 2018

    Amended Answer: The answer was amended on November 1, 2018 and again on May 23, 2019. The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.

16. Allegation: Debtor disclosed in his SOA, Q 18, that within 2 years prior to the Filing Date he did not sell, trade, or otherwise transfer any property to anyone other than property transferred in the ordinary course of his business or financial affairs.

    Answer: Admitted

    Amended Answer: Admitted, that the Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.

17. Allegation: Debtor disclosed in his SOA, that he had not stored any property in a storage unit within 1 year prior to the Fling Date.

    Answer: Admitted. None of the Debtor's personal property is located in any storage unit.  The property of a separate business (Wagner Family Real Estate Partners, LP) is stored in that facility. The defendant's minority ownership interest of 15% in that company was disclosed.

18. Allegation: Debtor disclosed in his SOA, Q23, that he does not hold or control any property that someone else owns.

    Answer: Admitted

    Amended Answer: Admitted, that the Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.

19. Allegation: The Debtor's first Bankruptcy Code § 341 Meeting was conducted by the Trustee on February 22, 2018 ("341 Meeting").

    Answer: Admitted

20. Allegation: The 341 Meeting was held and continued to March 27, 2018 because the Trustee requested that the Debtor produce documents and information to her regarding his personal and business financial affairs. The continued 341 Meeting was continued to May 23, 2018.

    Answer: Admitted. Extensive materials were produced by defendant during this period. The Debtor has invested more than 65 man-days (over 520 hours) in responding to the inquiries of the Trustee.  The Debtor has provided thousands of pages of documents, detailed spreadsheet summaries, has attended seven separate 341 meetings, and has reviewed and provided detailed spreadsheet summaries for the trustee of every month's bank statement for more than 10 different companies and 5 different individuals, across 4 different banking institutions, for more than a four

year period. The defendant provided a binder to the trustee with a summary of his companies and documentation, which after one year and after numerous requests has never been returned to him by the trustee.

21. Allegation: On May 23, 2018 the continued 341 Meeting was conducted by the Trustee and continued to June 20, 2018 because the Trustee requested the Debtor to produce documents and information to her regarding his personal and business financial affairs.

       Answer: Admitted that the May 23, 2018 continued 341 meeting was held and that new additional information was requested from Debtor. Extensive materials were again produced by the defendant during this period.

22. Allegation: On June 20, 2018 the continued 341 Meeting was not held and continued to August 29, 2018 while the Debtor continued to search for information and documentation in response to the Trustee's information requests.

       Answer: Admitted that the June 20, 2018 continued 341 meeting was held and that new additional information was requested from Debtor. Extensive materials were again produced by the defendant during this period.

23. Allegation: On August 29, 2018 the continued 341 Meeting was not held as Debtor was unable to appear as a result of a medical issue and the continued 341 Meeting was continued to October 31, 2018 while the Debtor continued to search for personal and business information and documentation in response to the Trustee's information requests.

       Answer: Admitted that the August 29, 2018 continued 341 meeting was not held since the Debtor was in the hospital that day. Admitted that the continued 341 meeting was continued to October 31, 2018 and that new additional information was requested from Debtor. Extensive materials were again produced by Wagner during this period.

24. Allegation: On October 31, 2018 the continued 341 Meeting was held and continued to November 28, 2018 because the Trustee requested the Debtor to produce additional documents and information to her regarding his personal and business financial affairs.

       Answer: Admitted that the October 31, 2018 continued 341 meeting was held and that new additional information was requested from Debtor. Extensive materials were again produced by Wagner during this period.

25. Allegation: On November 28, 2018 he continued 341 Meeting was not held and continued to January 9, 2018 while the Debtor continued to search for additional personal and business information and documentation requested by the Trustee.

       Answer: Admitted that the November 28, 2018 continued 341 meeting was held and that new additional information was requested from Debtor. Extensive materials were again produced by Wagner during this period.

26. Allegation: On January 9, 2019 the continued 341 Meeting was held and continued to February 13, 2019 because the Trustee requested the Debtor to produce additional documents and information to her regarding his personal and business financial affairs.

       Answer: Admitted that the January 9, 2019 continued 341 meeting was held and that new additional information was requested from Debtor. Extensive materials were again produced by Wagner during this period.

27. Allegation: On February 12, 2019 the Trustee was notified by Debtor's counsel that the
Debtor would not appear on February 13, 2019 due to a medical issue and the
continued 341 Meeting was rescheduled to March 20, 2019.

     Answer: that the February 12, 2019 continued 341 meeting was not held since the Debtor was
again in the hospital that day.  Admitted that the continued 341 meeting was continued to March
20, 2019 and that new additional information was requested from Debtor.

28. Allegation: On March 20, 2019 the continued 341 Meeting was held and conditionally
concluded because the Trustee requested the Debtor to produce additional documents
and information to her as a condition to closing the 341 Meeting.

     Answer: Admitted that the continued 341 meeting was concluded and that Debtor produced all of
the final documents and information requested.  Denied that the meeting was conditionally
concluded.

29. Allegation: The Trustee was required to conduct and continue the 341 Meeting several times
because the Debtor was unable to provide Trustee with all of his personal and
business records and as a result, the Trustee was forced to obtain financial records
through subpoenas of financial institutions and 3rd parties.

     Answer: Denied that the Debtor was unresponsive in any way to the numerous requests for
information from the Trustee.  Debtor was fully cooperative with subpoenas for missing
documents and was, in fact, the original source of suggestions that subpoenas be used to obtain
these missing documents and financial records, as he did not have the thousands of dollars
demanded by the financial institutions to obtain them.

30. Allegation: Prior to the Filing Date, the Debtor was an executive officer, held controlling
positions in, was a member of and or was a controlling interest holder in several
entities owned or controlled by him and or by entities owned or controlled by his
immediate family members, including, but not limited to, the following entities:
Downing Investment Partners, LP; Downing Partners LLC; Downing Health
Technologies; Downing Medical Device Group, LLC; Downing Digital Healthcare
Group, LLC; Downing Acquisition Partners, LLC; Downing M&A, LLC; IVC
Healthcom, LLC; 3si Systems, LLC (formerly Downing Health Technologies and
Downing Digital Healthcare Group); 3si International LLC; Surgical Safety
Solutions, LLC; Hanover Square Capital Partners, LP; Hanover Square Management,
LLC; Cliniflow Technologies, LLC; Downing Medventures LLC; the David Wagner
Revocable Trust 2004; Wagner Family Real Estate Partners, LP; the Wagner Family
2011 Charitable Remainder Unitrust; Wagner Family Irrevocable Education Trust;
Telephase Holdings (owned 90% by Downing Investment Partners); Telecardia, LLC
(owned 100% by Telephase Holdings) and phase2 Microtechnologies (owned 25%
by Downing Investment Partners and Telephase Holdings).

     Answer: Denied. The question is compound, vague, and imprecise as to entities and to time.
Notwithstanding the foregoing, Debtor's understood his only meaningful association with
operating entities at the time of his filing on January 17, 2018 was limited to three entities:
Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP
(Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership).

     Amended Answer: Denied. The question is compound, vague, and imprecise as to entities and to
time. Notwithstanding the foregoing, Debtor's understood his only meaningful association with
operating entities at the time of his filing on January 17, 2018 was limited to three entities:
Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP

(Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures. These detailed disclosures include extensive information about all of Debtors indirect ownership interests and company affiliations. This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

31. Allegation: Debtor also held executive positions with, and owned or controlled by Debtor or his family members, and or owned an interest in Cardiorobotics, Inc. and Medrobiotics, Inc.

Answer: Denied. The question is compound, vague, and imprecise as to entities and to time. Notwithstanding the foregoing, Debtor had no positions as stated in this question at the time of filing or years prior thereto.

Amended Answer: Denied. The question is compound, vague, and imprecise as to entities and to time. Notwithstanding the foregoing, Debtor had no positions as stated in this question at the time of filing or years prior thereto. The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures. These detailed disclosures include extensive information about all of Debtors indirect ownership interests and company affiliations. This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

32. Allegation: The business and financial affairs of the entities referenced in Paragraph 31 were operated and or controlled by the Debtor or through entities wherein he and or his family members owned a controlling interest.

Answer: Denied that the business and financial affairs of the entities referenced in Paragraph 31 were ever operated or controlled by the Debtor or through entities wherein Debtor owned a controlling interest.

Amended Answer: Denied that the business and financial affairs of the entities referenced in Paragraph 31 were ever operated or controlled by the Debtor or through entities wherein Debtor owned a controlling interest. Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures. These detailed disclosures include extensive information about all of Debtors indirect ownership interests and company affiliations. This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

33. Allegation: Debtor conducted and controlled business operations for the entities referenced in Paragraph 31 out of several locations, including but not limited to, his home office at

55 Downing Street in East Greenwich, RI, leased office space located at 1350
Division Rd. West Warwick, leased office space located at 225 Franklin Street
Boston, Ma., leased office space located in Hartford, Connecticut and leased space
located at 590 Madison Ave., New York, NY.

> Answer: Denied that the business and financial affairs of the entities referenced in Paragraph 31 were ever operated or controlled by the Debtor or through entities wherein Debtor owned a controlling interest.

> Amended Answer: Denied that the business and financial affairs of the entities referenced in Paragraph 31 were ever operated or controlled by the Debtor or through entities wherein Debtor owned a controlling interest.  Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtors indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

34. Allegation: Debtor carried out and controlled the financial affairs of the entities referenced in
Paragraph 31 through bank accounts established by or at the direction of Debtor, at
several financial institutions, including but not limited to, multiple accounts located at
Citizens Bank, JP Morgan Chase, Silicon Valley Bank and UBS.

> Answer: Denied that the business and financial affairs of the entities referenced in Paragraph 31 were ever operated or controlled by the Debtor or through entities wherein Debtor owned a controlling interest.

> Amended Answer: Denied that the business and financial affairs of the entities referenced in Paragraph 31 were ever operated or controlled by the Debtor or through entities wherein Debtor owned a controlling interest.  Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtors indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

35. Allegation: Debtor also was joint owner of and or had access to accounts by interbank
transfers to transfer funds into several noncorporate accounts with his children and or
his wife at Citizens Bank, including but not limited to, account no. 2764 (son James
and Debtor), 5596 (wife Carol), 5618 (Carol and Debtor), 0356 (daughter Jacqueline

and Debtor), 0364 (daughter Meredith and Debtor) and 0348 (James and Debtor) and
several accounts at Silicon Valley Bank, JPMorgan Chase Bank and UBS.

Answer: Denied that as of the filing date the Debtor was joint owner of any bank accounts with
spouse or children within two years prior to filing date, other than a possible transfer of funds
from his personal bank accounts to the personal bank accounts of his spouse and children

Amended Answer: Denied that as of the filing date the Debtor was joint owner of any bank
accounts with spouse or children within the year prior to filing date, other than two joint accounts
with his spouse at Citizens Bank, both of which had been closed by the bank prior to the Filing
Date.  Also, occasional transfer of funds from his personal bank accounts to the personal bank
accounts of his spouse and children in the ordinary course.

36. Allegation: The Debtor controlled and or had signature authority over substantially all of the
bank accounts of the entities referenced in Paragraph 31 and had access to and the
ability to transfer funds into the accounts referenced in Paragraph 34 and 35

Answer: Denied that Debtor had any control or signature authority over any bank accounts of the
entities referenced in Paragraph 31 within five years prior to the date of filing.

Amended Answer: Denied that the business and financial affairs of the entities referenced in
Paragraph 31 were ever operated or controlled by the Debtor or through entities wherein Debtor
owned a controlling interest.  Notwithstanding the foregoing, Debtor's understood his only
meaningful association with operating entities at the time of his filing on January 17, 2018 was
limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real
Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor
25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and
appropriate disclosures.  These detailed disclosures include extensive information about all of
Debtors indirect ownership interests and company affiliations.  This extensive information
includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any
company bank accounts; amount of balance in any company bank account on the Filing Date; any
company assets; estimated value of any company assets on the Filing Date; and relevant notes or
comments for any company where Debtor has a direct or indirect ownership interest.

Amended Answers to Paragraph 34 and Paragraph 35 are also included as responsive to portions
of this Paragraph 36.

37. Allegation: The Debtor directed the movement and use of funds to and from the corporate
accounts and to the personal accounts by wires, checks, interbank transfers, ATM and
through bank/Visa cards to withdraw and transfer funds and incur and pay for
personal debt and expenses to or for the benefit of himself and his family members,
for many years prior to the Filing Date.

Answer: The defendant is without sufficient information to admit or deny the allegations of
paragraph 37 since no "company accounts" are specified and leave the Plaintiff to its proof. To
the extent an answer is required, the allegation should be considered denied. The Debtor
vigorously denies any assertions that any personal compensation, or material expenses, for
himself or his family were paid out of any company that involved outside investors as minority
shareholders.  The facts will show that there is no evidence to support any unauthorized or
inappropriate payments to the Debtor, or to his family, from any company that had any outside
investors involved as minority shareholders.  These facts are solidly supported by extensive
evidence produced, including bank records for all companies and the Debtor for at least four

years prior to the filing of the Chapter 7 petition.  The Debtor did pay himself and personal expenses, but only from companies that were 100% owned by himself or his immediate family members. None of the evidence supports any assertion that any personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders.

Amended Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 37 since no "company accounts" are specified and leave the Plaintiff to its proof. To the extent an answer is required, the allegation should be considered denied. The Debtor vigorously denies any assertions that any personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders.  The facts will show that there is no evidence to support any unauthorized or inappropriate payments to the Debtor, or to his family, from any company that had any outside investors involved as minority shareholders.  These facts are solidly supported by extensive evidence produced, including bank records for all companies and the Debtor for at least four years prior to the filing of the Chapter 7 petition.  The Debtor did pay himself and personal expenses, but only from companies that were 100% owned by himself or his immediate family members. None of the evidence supports any assertion that any personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.


38. Allegation: Debtor did not have control and possession of all business and financial records of the entities referenced in Paragraph 31 or the financial institutions referenced in Paragraphs 34, where these entities carried out their financial affairs, as of the Filing Date.
    Answer: Admitted

39. Allegation: Certain corporate and business records and computers of the entities referenced in Paragraph 31 were sold in 2017 at a Sheriff's sale of the contents of an entity controlled by Debtor, CliniflowTechnologies, LLC ("Cliniflow"), that was evicted from Cliniflow's leased office space in Hartford Connecticut.
    Answer: Admitted

40. Allegation: Debtor failed to preserve, control and retain possession of those business and financial records sold by the Sheriff in 2017,
    Answer: Denied that the Debtor breached any duty to preserve or retain financial records, whether his or another entity's.

41. Allegation: Debtor failed to preserve and retain copies of various financial records, including Quick Book files, pertaining to his personal and business affairs.
    Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 37 since no specific records or time periods are specified and leave the Plaintiff to its proof. To the extent an answer is required, the allegation should be considered denied. Denied that the Debtor breached any duty to preserve or retain financial records, whether his or another entity's.

42. Allegation: Certain business records and computers containing business and financial
records, were previously located in 2017 in space leased by Wagner Family Real
Estate Partners ("WFRE") at 1350 Division Rd. West Warwick, RI, where Debtor
conducted business operations.
    Answer: Admitted

43. Allegation: Debtor testified the lease for the WFRE office space went into default and the
business records, computers and furniture were removed in 2017, at Debtor's
direction, to a storage facility leased by one of his business entities ("POD").
    Answer: Admitted that the Debtor sought to preserve the records by moving them to a POD

44. Allegation: Trustee requested turnover of the records and computers in the POD and Debtor
testified he was denied access to the POD by the landlord because the WFRE lease
was in default.
    Answer: Admitted

45. Allegation: The Debtor incorporated Hanover Group International, with a business address of
Harvard Square, One Mifflin Place, Suite 400 Cambridge, Mass. 02138 on or about
May 2018 ("Hanover Group").
    Answer: Admitted

46. Allegation: The website for Hanover Group states that it has branch offices in London, Paris
and Berlin.
    Answer: Admitted

47. Allegation: Trustee questioned Debtor about Hanover Group at the 341 Meeting conducted on
January 9, 2019 and Debtor testified Hanover Group does not have offices in London,
Paris and or Berlin.
    Answer: Denied. Debtor testified that Hanover Group did not "yet" have offices in London, Paris
    or Berlin

48. Allegation: Prior to the Filing Date, Debtor and several entities owned or controlled by him,
were named defendants in several lawsuits dating back to 2015 ("Lawsuits").
    Answer: Admitted

49. Allegation: Plaintiffs in the Lawsuits allege, among other things, Debtor and entities he
controlled, participated in fraudulent activity and operated a Ponzi scheme.
    Answer: Denied. The question is denied as being compound and vague as to the activities
    described.

50. Allegation: Debtor was named a defendant in a proceeding filed in 2015 titled Eric Hassman
v. Downing Partners, LLC et al., pending in the USDC for the District of
Massachusetts at Docket 15-cv-11604.
    Answer: Denied that this case is pending.  Admitted that the Debtor was named as a Defendant
    and that the case and all related matters were settled in February 2016 and the case was dismissed
    in March 2016.

51. Allegation: Debtor was named a Defendant in a proceeding filed in 2016 in the Southern
District of New York titled David Hildebrand, David Kiderman, Ryan Detzel and
Mark Miller v Downing Partners LLC, et al., at Docket 16-04040 ("Kiderman").
Judge Failla is the presiding Judge in that proceeding.

Answer: Admitted

52. Allegation: Debtor participated in a proceeding filed in 2017 in the Southern District of New York titled Wesley Holding, LLC v 3si et al., at Docket 17-3662. Judge Failla is also the presiding Judge in that proceeding.
        Answer: Admitted that the Defendant was named as a defendant in the aforesaid proceeding.

53. Allegation: Debtor was named a defendant in a proceeding filed in 2017 in the Delaware courts titled Paul Giroux v David Wagner et al., at Docket N17J-00001.
        Answer: Admitted

54. Allegation: Debtor was named a defendant in a proceeding filed in 2017 in the District Court of Massachusetts titled Glen Haufler ("Haufler") v Downing Investment Partners, et al, at 17-3362.
        Answer: Admitted

55. Allegation: Debtor was named a defendant in a proceeding filed in 2017 in the Rhode Island District Court titled Marc Lawrence v David Wagner, et al., at Docket 17-cv- 00511.
        Answer: Admitted

56. Allegation: As a result of Debtor's and his entities' participation in these Lawsuits, all filed before the Filing Date, Debtor was aware of and had an obligation to preserve his business and financial records for himself and his business entities.
        Answer: Denied

57. Allegation: Debtor testified he derived no income from the entities listed in Par 31 as of the Filing Date.
        Answer: Admitted that Debtor received no income from the entities listed in Par 31 for at least 5 years prior to the filing date.

58. There is no paragraph #58

59. There is no paragraph #59

## **COUNT I**

60. Allegation: The Plaintiff restates the allegations contained in Paragraphs 1 through 59 of her Complaint as if fully set forth herein.
        Answer: No answer needed

61. Allegation: Bankruptcy Code § 727 (a)(3) provides that:
(a) The Court shall grant a discharge, unless-
(3) The Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the Debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.
        Answer: No answer needed

62. Allegation: The Debtor, while controlling the operations and financial affairs of his various businesses, has concealed, destroyed and failed to keep or preserve recorded information

including books, documents, computers, computer records, financial records,
QuickBooks records, papers and financial information on thumb drives.
      Answer: Denied

63. Allegation: Debtor instructed Mr. Lawrence ("Lawrence") to place certain business
information on a thumb drive ("Thumb Drive"), turn the Thumb Drive over to Debtor
and destroy the documents that he transferred onto the Thumb Drive.
      Answer: Admitted that many years prior to the filing date Mr. Lawrence was terminated from
      employment.  As is standard business practice, the employee was ordered to turn over all
      pertinent business documents to the employer and destroy personal copies thereof.

64. Allegation: Lawrence turned over the Thumb Drive to Debtor and destroyed the records At
Debtor's direction.
      Answer: Admitted that the person referred to in allegation 63 complied with the directive set forth
      therein.

65. Allegation: Debtor does not have copies of the records placed on the Thumb Drive.
      Answer: Denied.  Debtor did preserve duplicate copies of the information on the Thumb Drive
      that was provided by Mr. Lawrence. That company information consisted of Mr. Lawrence's
      emails. Those duplicate records were provided to the judge and opposing counsel in the New
      York proceedings by Debtor's counsel. To the best of Debtor's recollection, the original Thumb
      Drive itself is still retained with various other company materials in the storage unit that Debtor
      authorized the Trustee to access.

66. Allegation: Debtor did not have the Thumb Drive or a copy of the Thumb Drive to turn over
to the Trustee.
      Answer: Denied

67. Allegation: Cliniflow operated out of leased office space in Hartford Connecticut.
      Answer: Admitted

68. Allegation: The Cliniflow office contained business computers and business records for
certain of Debtor's entities, including Cliniflow.
      Answer: Admitted

69. Allegation: The lease for the Cliniflow office went into default and the contents of the office
were sold by a Sheriff in 2017 after the commencement of the Kiderman case and
several of the Lawsuits, without Debtor providing notice to the Kiderman Plaintiffs or
Judge Failla.
      Answer: The Debtor does not have sufficient information at this time to form a reasonable belief
      enabling him to admit or deny the allegation regarding when or if notice of the eviction was given
      to any party. The Debtor reserves the right to amend this answer upon further review. To the
      extent an answer is required, it should be considered denied.

70. Allegation: Debtor testified at the 341 Meeting that various assets, including office furniture,
business computers and financial records located in the West Warwick office of
WFRE were moved at his direction to the POD in 2017.
      Answer: Admitted

      Amended Answer: Admitted that assets of separate companies were moved, but denied that any
      of these assets were the personal property of the Debtor.

71. Allegation: Debtor testified that the Thumb Drive given him by Lawrence "could" be in
Lawrence's personnel file which he moved into the POD with the other contents of
the WFRE office in 2017.
     Answer: Admitted

72. Allegation: Trustee requested Debtor turn over to her the computers and records contained in
the POD and the Debtor testified that the landlord refused him access to the POD
because of the default and he therefore was unable to turn over the records and
computers and as a result was unable to respond to several of Trustee's information
and document requests for financial and business records.
     Answer: Admitted. Debtor repeatedly and consistently provided his consent to the Trustee's
     access to the contents of the POD.

73. Allegation: Several months after the Filing Date in 2018, the Trustee arranged for access to
the POD from the POD's landlord, and requested keys to the pad lock to the POD
from the Debtor, but Debtor did not have the keys.
     Answer: Admitted. Debtor repeatedly and consistently provided his consent to the Trustee's
     access to the contents of the POD.

74. Allegation: Trustee was required to cut off the pad lock with bolt cutters to obtain access to
the POD and purchase a new lock for the POD.
     Answer: Defendant has no personal knowledge sufficient to respond to this question. Debtor
     admits that Trustee's counsel has stated that this is the case.

75. Allegation: Trustee retrieved certain corporate and financial records of the Debtor and his
companies along with Lawrence's Personnel file from the POD.
     Answer: Defendant has no personal knowledge sufficient to respond to this question. Debtor
     admits that Trustee's counsel has stated that this is the case.

76. Allegation: Trustee was unable to locate the computers or the Thumb Drive in the POD and
so advised Debtor and his counsel.
     Answer: Defendant has no personal knowledge sufficient to respond to this question. Debtor
     admits that Trustee's counsel has stated that this is the case.

77. Allegation: On January 4, 2019 Debtor advised the Trustee, through his counsel, that the
eviction from the West Warwick office of WFRE had actually taken place in
September 2017, and prior to that date, Debtor directed that the computers that were
located at the West Warwick office of WFRE be shipped to the Hartford office of
Cliniflow.
     Answer: Denied that there was any new information disclosed on January 4, 2019. All
     information provided to the Trustee regarding this question was specifically stated as being the
     Debtor's best recollections. The Debtor has consistently testified that he has no specific
     recollection of exactly what assets went to which locations on what specific dates, but that his
     general recollection was that some assets (including office furniture, office equipment, files and
     computers) were moved to Hartford and some assets were kept in West Warwick and
     subsequently placed in storage

78. Allegation: The WFRE computers were included in the Cliniflow assets sold by the Sherriff
in 2017 and were not in the POD on the Filing Date.
     Answer: Denied. The CliniFlow eviction occurred prior to the West Warwick eviction and did not

have any "WFRE computers"

79. Allegation: Debtor failed to preserve documents and computer records regarding his personal
and business financial affairs by transferring computers from West Warwick to Hartford
and permitting the computers to be sold, along with the business records located at the
Cliniflow offices, by a Sherriff at a time after he was informed by his counsel of his duty
to preserve records
     Answer: Denied

80. Allegation: Wesley Holdings Ltd. ("Wesley"), a secured creditor of 3si Systems, LLC ("3si")
filed a Complaint in the Southern District of NY at Case No 1:17-cv-3362-KPF on 5/5/17
naming 3si, SSS, LLC, Downing Health Technologies, LLC, Downing Investment
Partners, LP, Downing Partners, LLC, HSCP, Cliniflow and the Debtor as defendants
(collectively hereinafter referred to as the ("Wesley Defendants") seeking foreclosure and
the appointment of a receiver stemming from defaults under a note and loan documents
and other alleged misconduct of the Wesley Defendant,s including fraudulent
representations and the operation of a Ponzi Scheme.
     Answer: Admitted as to the existence of the lawsuit, which was subsequently dismissed. The
     allegations in the suit speak for themselves and should not be paraphrased by the Plaintiff. Denied
     as to any specific allegation not particularly alleged in the complaint.

81. Allegation: After conducting a hearing and conferences on May 25, 2017, June 20, 2018 and
on July 28, 2017, Judge Failla found just cause to grant the relief Wesley requested and
appointed William Brandt, Jr. as receiver of 3si and Wesley's collateral ("Receiver").
     Answer: Admitted. However, Debtor believes that his attorney thwarted the Debtor's effort to
     present his defenses. As a result, the Debtor's legal and factual arguments were never presented
     as a defense to all of the claims in these cases, which resulted in multimillion-dollar losses to the
     Debtor.

82. Allegation: On June 20, 2018 Judge Failla conducted a telephonic conference in the Wesley
and Kiderman proceedings to consider, among other things, a motion for sanctions
against the Kiderman Defendants, including the Debtor and stated, "With full knowledge
of this litigation and having been advised by Mr. Jesser of the need to hold on responsive
documents, Mr. Wagner vacated one office suite, leaving behind a server, allowed third party
vendors to retain responsive materials without letting his attorney know of the
existence of these materials and failed to produce responsive documents. At the very
best, I can say that this is obstructive conduct that is reckless…… I think this may well be
intentional conduct." June 20, 2018 hearing transcript at Page 22 Lines 5 – 16,
(hereinafter referred to as "TR1").
     Answer: Admitted that the transcript speaks for itself. The Debtor's attorney never informed the
     Court that the Debtor had responded to discovery requests vigorously and proactively, and in fact
     misled the Court by not admitting that he had sat on discovery responses prepared by the Debtor
     for months, giving the judge in those proceedings the false impression that the Debtor had
     willfully failed to preserve information or respond to discovery.

83. Allegation: Debtor's counsel in the Kiderman proceeding was asked if he had informed
Debtor of the need to preserve documents and Mr. Jesser, advised Judge Failla he had
notified Debtor he needed to preserve records in conjunction with that 2016 proceeding.
TR1, at Page 10 Lines 20-25 and Page 11 Lines 1-3.
     Answer: Admitted. See answer 82, incorporated herein by reference.

84. Allegation: Debtor was requested to provide the Trustee with his income and wage records
regarding income received from his entities referenced in Paragraph 31 during the period
2016 to the Date of Filing and he has failed to provide said income records.

     Answer: Denied. Debtor had no income or wages from the entities in paragraph 31 in the five
     years prior to filing.  The Debtor has provided the trustee with his income and wage records from
     all affiliated entities.

85. As a result of Debtor's failure to preserve records since the 2015 litigation, his
directive to Lawrence to destroy records, his failure to preserve the Thumb Drive, his
failure to retain records from his West Warwick and Hartford offices, his permitting his
business records to be sold by a sheriff without notifying litigants or the Court, his failure
to preserve income records and his failure to preserve and maintain business and financial
records, Debtor's discharge should be denied under Bankruptcy §727 (a)(3).

     Answer: Denied.

## COUNT II

86. Allegation: The Plaintiff restates the allegations contained in Paragraphs 1 through 85 of her
Complaint as if fully set forth herein.

     Answer: No answer required.

87. Allegation: Bankruptcy Code § 727 (a)(4) provides that:
(a) The Court shall grant the Debtor a discharge, unless-
(4) the Debtor knowingly and fraudulently, in or in connection with the
case;
(A) made a false oath or account;

     Answer: No answer needed.

88. Allegation: For several years, including the year before the Filing Date and thereafter, Debtor
has engaged in a pattern of hiding, commingling and transferring funds, through accounts of
various entities owned and or controlled by him or his family members, to or for the benefit of
himself, his family members and other businesses he or his family owned and controlled.

     Answer: Denied. The Debtor vigorously denies any assertions that any personal compensation, or
     material expenses, for himself or his family were paid out of any company that involved outside
     investors as minority shareholders.  There is no evidence to support any unauthorized or
     inappropriate payments to the Debtor, or to his family, from any company that had any outside
     investors involved as minority shareholders.  The Debtor has provided extensive evidence to the
     trustee, including bank records for all companies and the Debtor for at least four years prior to the
     filing of the Chapter 7 petition.  Any payments made to the Debtor were from companies that
     were 100% owned by himself or his immediate family members.

     Amended Answer: Denied. The Debtor vigorously denies any assertions that any personal
     compensation, or material expenses, for himself or his family were paid out of any company that
     involved outside investors as minority shareholders.  There is no evidence to support any
     unauthorized or inappropriate payments to the Debtor, or to his family, from any company that
     had any outside investors involved as minority shareholders.  The Debtor has provided extensive
     evidence to the trustee, including bank records for all companies and the Debtor for at least four
     years prior to the filing of the Chapter 7 petition.  Any material payments made to the Debtor
     were from companies that were 100% owned by himself or his immediate family members.

     A detailed listing of each individual transaction for any material payments received, or paid to the

benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

89. Allegation: The Debtor controlled the flow of funds through these entities and accounts, to himself and family members by interbank transfers, by checks, by wires, by ATM deposits and withdrawals and use of Bank and or company issued credit cards to incur and pay for purchases and living and entertainment expenses for himself and his family members.
      Answer: Denied.

90. Allegation: Within the year prior to the Filing Date, Debtor transferred funds in and out of an account controlled by him under the name Hanover Square Capital Partners ("HSCP") at Citizens Bank account # 329-8, to among others, himself, his wife, his children, the Wagner Family Educational Trust, Downing Acquisition Partners, Downing Medventures, Cliniflow and the Wagner Family Real Estate accounts.
      Answer: Admitted that Debtor transferred funds in and out of an account where he had signature authority under the name Hanover Square Capital Partners ("HSCP") at Citizens Bank account # 329-8. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners. Payments and transfers were made by Debtor to family members and other parties.  Debtor's ownership in HSCP was disclosed in his filings and the Debtor prepared detailed spreadsheets to give the trustee a roadmap of the transactions.

      Amended Answer: Admitted that Debtor transferred funds in and out of an account where he had signature authority under the name Hanover Square Capital Partners ("HSCP") at Citizens Bank account # 329-8. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners. Payments and transfers were made by Debtor to family members and other parties.  Debtor's ownership in HSCP was disclosed in his filings and the Debtor prepared detailed spreadsheets to give the trustee a roadmap of the transactions.

      A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

91. Allegation: Debtor used funds of HSCP to pay for household living expenses and to or for the benefit of himself and family members for entertainment and living expenses.
      Answer: Admitted that Debtor transferred funds in and out of an account where he had signature authority under the name Hanover Square Capital Partners ("HSCP") at Citizens Bank account # 329-8. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners. Also see Answer 90, incorporated herein by reference.

      Amended Answer: Admitted that Debtor transferred funds in and out of an account where he had signature authority under the name Hanover Square Capital Partners ("HSCP") at Citizens Bank account # 329-8. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners. Also see Answer 90, incorporated herein by reference.

      A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

92. Allegation: Within the year prior to the Filing Date, Debtor transferred funds in and out of an account controlled by him under the name of Surgical Safety Solutions ("SSS") at Citizens Bank account # 3647, with deposits made from Downing Investment Partners, Hanover Square Capital Partners and Cliniflow and directed funds to be transferred to, among others, Downing Investment Partners, Hanover Square Capital Partners, Downing Medventures, 3si, Downing Acquisition Partners and to or for the benefit of himself and family members.

      Answer: Denied. The allegations are vague and compound, refer to many entities, and have no dates or times set forth.  Debtor vigorously denies any assertions that any transactions which might be associated with this allegation regarding personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders, including Surgical Safety Solutions, LLC, or were not legitimate Management Fees from Surgical Safety Solutions, LLC to one or more of his personally-owned companies under the terms of a Management Services Agreement. This Management Services Agreement was disclosed to, and approved by, minority shareholders. This Management Services Agreement, and related authorizations, have been provided to the Trustee.

      Amended Answer: Denied. The allegations are vague and compound, refer to many entities, and have no dates or times set forth.  Debtor vigorously denies any assertions that any transactions which might be associated with this allegation regarding personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders, including Surgical Safety Solutions, LLC, or were not legitimate Management Fees from Surgical Safety Solutions, LLC to one or more of his personally-owned companies under the terms of a Management Services Agreement. This Management Services Agreement was disclosed to, and approved by, minority shareholders. This Management Services Agreement, and related authorizations, have been provided to the Trustee.

      A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

93. Allegation: Within the year prior to the Filing Date, Debtor transferred funds in and out of an account controlled by him under the name of Downing Acquisition Partners LP at Citizens Bank account # 790-4, to among others, Downing Investment Partners, himself, daughter Jacqueline, wife Carol, son James, Downing Medventures, Cliniflow, Surgical Safety Solutions, Downing Digital Healthcare Group, Wagner Family Real Estate Partners, Wagner Family Education Trust, HSCP, and to or for the benefit of himself and his family members.

      Answer: Admitted that Debtor transferred funds in and out of an account where he had signature authority under the name Downing Acquisition Partners ("DAP") at Citizens Bank account # 790-4. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners.

      Amended Answer: Admitted that Debtor transferred funds in and out of an account where he had signature authority under the name Downing Acquisition Partners ("DAP") at Citizens Bank account # 790-4. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners.

      A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

94. Allegation: Within the year prior to the Filing Date, Debtor transferred funds in and out of

an account controlled by him in the name of Downing Investment Partners LP at Citizens Bank
account # 8419, to among others, Cliniflow, Downing Acquisition Partners, LLC, Wagner
Family Real Estate and to Hanover Square Management and to or for the benefit of himself and
his family members.

Answer: Denied. The allegations are vague and compound, refer to many entities, and have no
dates or times set forth.  Debtor vigorously denies any assertions that any transactions which
might be associated with this allegation regarding personal compensation, or material expenses,
for himself or his family were paid out of any company that involved outside investors as
minority shareholders, including Downing Investment Partners LP, or were not legitimate
Management Fees from Downing Investment Partners LP  to one or more of his personally-
owned companies under the terms of a Management Services Agreement. This Management
Services Agreement was disclosed to, and approved by, minority shareholders. This Management
Services Agreement, and related authorizations, have been provided to the Trustee.

Amended Answer: Denied. The allegations are vague and compound, refer to many entities, and
have no dates or times set forth.  Debtor vigorously denies any assertions that any transactions
which might be associated with this allegation regarding personal compensation, or material
expenses, for himself or his family were paid out of any company that involved outside investors
as minority shareholders, including Downing Investment Partners LP, or were not legitimate
Management Fees from Downing Investment Partners LP  to one or more of his personally-
owned companies under the terms of a Management Services Agreement. This Management
Services Agreement was disclosed to, and approved by, minority shareholders. This Management
Services Agreement, and related authorizations, have been provided to the Trustee.

A detailed listing of each individual transaction for any material payments received, or paid to the
benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the
Trustee and have been included in the Aggregate Filings as attachments.

95. Allegation: Within the year prior to the Filing Date, Debtor transferred funds in and out of an
account controlled by him under the name of WFRE at Citizens Bank account # 8188, with
deposits made from Downing Acquisition Partners, Downing Medventures, Hanover Square
Management, Hanover Square Capital Partners and transferred funds out to among others,
Cliniflow, Hanover Sq. Capital Partners, Hanover Square Management, Downing Acquisition
Partners, the Wagner Family Education Trust and to or for the benefit of himself and his family
including a using the funds for a 20K deposit paid in association with the family summer rental
property in Nantucket (Check # 1083 for 20K), payments to EGYC (Check # 1058 for
$1052.30) and Kent County Water (Check # 1041 for $850)

Answer: Admitted that Debtor transferred funds in and out of an account where he had signature
authority under the name Wagner Family Real Estate Partners ("WFREP") at Citizens Bank
account # 8188. This company was wholly-owned by Debtor and his immediate family members
with no outside shareholders as minority owners.

Amended Answer: Admitted that Debtor transferred funds in and out of an account where he had
signature authority under the name Wagner Family Real Estate Partners ("WFREP") at Citizens
Bank account # 8188. This company was wholly-owned by Debtor and his immediate family
members with no outside shareholders as minority owners.

A detailed listing of each individual transaction for any material payments received, or paid to the
benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the
Trustee and have been included in the Aggregate Filings as attachments.

96. Allegation: Within the year prior to the Filing Date, Debtor transferred funds in and out of an account controlled by him under the name of Wagner Family Education Trust ("WFET") at Citizens Bank # 981-8 and transferred funds in from Downing Acquisition Partners, Hanover Square Management and WFRE and transferred funds out to SSS, Downing Acquisition Partners, Hanover Square Capital Partners and to and for the benefit of himself and his family members.

> Answer: Admitted that Debtor transferred funds in and out of an account where he had signature authority under the name Wagner Family Education Trust ("WFET") at Citizens Bank account # 9818. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners.
>
> Amended Answer: Admitted that Debtor transferred funds in and out of an account where he had signature authority under the name Wagner Family Education Trust ("WFET") at Citizens Bank account # 9818. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners.
>
> A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

97. Allegation: From November 2017 through December 2017, within the year prior to the Filing Date, there were several deposits made into Citizens account # 981-8 by wire transfer from unknown sources and funds were transferred out by Debtor by checks to or for the benefit of himself and family members to, among others, PCU for payments toward his daughter's auto loan (Check # 1301 for 639.98 and Check # 1303 for $1219) and to Kent County Water (Check # 1302 for $2020.05).

> Answer: Admitted that Debtor transferred funds in and out of an account where he had signature authority under the name Wagner Family Education Trust ("WFET") at Citizens Bank account # 9818. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners.
>
> Amended Answer: Admitted that Debtor transferred funds in and out of an account where he had signature authority under the name Wagner Family Education Trust ("WFET") at Citizens Bank account # 9818. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners.
>
> A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

98. Allegation: Within the year prior to the Filing Date, Debtor transferred funds in and out of an account controlled by him under the name Cliniflow at Citizens Bank account # 327-1, to among others, Downing Investment Partners (over 30K), Downing Digital Healthcare, Hanover Square Management, HSCP (in excess of 40K) and to or for the benefit of himself and family members for personal, household expenses and entertainment expenses.

> Answer: Denied. The allegations are vague and compound, refer to many entities, and have no dates or times set forth.  Debtor vigorously denies any assertions that any transactions which might be associated with this allegation regarding personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders or were not legitimate Management Fees from CliniFlow Technologies, LLC to one or more of his personally-owned companies under the terms of a Management

Services Agreement. This Management Services Agreement was disclosed to, and approved by, minority shareholders. This Management Services Agreement, and related authorizations, have been provided to the Trustee.

Amended Answer: Denied. The allegations are vague and compound, refer to many entities, and have no dates or times set forth.   Debtor vigorously denies any assertions that any transactions which might be associated with this allegation regarding personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders or were not legitimate Management Fees from CliniFlow Technologies, LLC to one or more of his personally-owned companies under the terms of a Management Services Agreement. This Management Services Agreement was disclosed to, and approved by, minority shareholders. This Management Services Agreement, and related authorizations, have been provided to the Trustee.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

Debtor has identified approximately thirty personal expenses totaling $10,477.46 that were paid out of the CliniFlow account at Citizens Bank in May 2017 and July 2017; however, these personal expenses were deducted from the $1,603,986 of unpaid compensation for management services that were payable to Debtor's wholly-owned management services company.  After the deduction of these personal expenses the unpaid balance payable to Debtor's wholly-owned company was reduced to $1,593,509 as reflected in the detailed attachments provided in the Aggregate Filings.

99. Allegation: Debtor utilized a credit card in the name of Cliniflow from Citizens account # 327-1 within the year prior to the filing to pay for household and family living expenses for himself and his family and withdrew cash from the account pursuant to ATM withdrawals and made purchases and payments by credit card including purchases at Wickford Appliance and payments to Santander.

Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 98 since this paragraph is lacking any specific details regarding these alleged transactions. To the extent that an answer is required, the allegation is denied. Debtor vigorously denies any assertions that any personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders, including CliniFlow Technologies, LLC

Amended Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 98 since this paragraph is lacking any specific details regarding these alleged transactions. To the extent that an answer is required, the allegation is denied. Debtor vigorously denies any assertions that any personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders, including CliniFlow Technologies, LLC

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

Debtor has identified approximately thirty personal expenses totaling $10,477.46 that were paid out of the CliniFlow account at Citizens Bank in May 2017 and July 2017; however, these

personal expenses were deducted from the $1,603,986 of unpaid compensation for management services that were payable to Debtor's wholly-owned management services company.  After the deduction of these personal expenses the unpaid balance payable to Debtor's wholly-owned company was reduced to $1,593,509 as reflected in the detailed attachments provided in the Aggregate Filings.

100. Allegation: From May 2017 – August 2017, deposits of over $ 40,000, resulting from over 60 wire transfers and other deposits, were directed by Debtor into an account under the name of Carol Wagner at Citizen's Bank # 561-8, and the funds were substantially used by bank card, ATM withdrawals and interbank transfers to or for the benefit of Downing MedVentures, Debtor, his wife and his children including charges associated with their summer vacation in Nantucket.

> Answer: Admitted that Debtor transferred funds into an account under the name Carol Wagner at Citizens Bank account # 5618. All such payments were from companies that were wholly-owned by Debtor's immediate family members with no outside shareholders as minority owners

> Amended Answer: Admitted that Debtor transferred funds into an account under the name Carol Wagner at Citizens Bank account # 5618. All such payments were from companies that were wholly-owned by Debtor's immediate family members with no outside shareholders as minority owners

> A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

101. Allegation: Upon information and belief, Carol Wagner was not employed by any of the entity's referend in Paragraph 31, or derived any independent income from any source, between January 2016 – August 2017.

> Answer: Admitted as to the entities in paragraph 31. Carol Wagner received partnership distributions from family-owned entities.

> Amended Answer: Admitted as to the entities in paragraph 31. Carol Wagner received partnership distributions from family-owned entities.

> A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

102. Allegation: In 2015, over 200K was transferred by Debtor into Carol Wagner's account # 561-8 from, among others, WFRE, Downing Partners LLC and Downing Investment Partners and funds were transferred out by interbank transfers to or for the benefit of the Debtor, his other businesses and family members while a bank card was used for ATM withdrawals and family charges and purchases.

> Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 102 since this paragraph is lacking any specific details. To the extent that an answer is required, the allegation is denied. Admitted that Debtor transferred funds into an account under the name Carol Wagner at Citizens Bank account # 5618. All such payments were from companies that were wholly-owned by Debtor's immediate family members with no outside shareholders as minority owners.

> Amended Answer: The defendant is without sufficient information to admit or deny the

allegations of paragraph 102 since this paragraph is lacking any specific details. To the extent that an answer is required, the allegation is denied. Admitted that Debtor transferred funds into an account under the name Carol Wagner at Citizens Bank account # 5618. All such payments were from companies that were wholly-owned by Debtor's immediate family members with no outside shareholders as minority owners.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

Alleged transactions from 2015 would have occurred three years prior to the Filing Date and are outside the scope of inquiry for this matter.

103. Allegation: From Jan 2017 – July 2017, Debtor transferred funds into his Citizens Bank account # 559-6, from several sources, including wires and bank transfers from among others, Downing Acquisition Partners, HSCP, Downing Medventures and WFRE and transferred funds out to WFRE, Downing Medventures and to or for the benefit of the Debtor and Family Members including use of a bank/credit card and payments were made to Santander and CarMax.

Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 102 since this paragraph is lacking any specific details. To the extent that an answer is required, the allegation is denied. Admitted that Debtor transferred funds into an account under the name David Wagner at Citizens Bank account # 5596. All such payments were from companies that were wholly-owned by Debtor's immediate family members with no outside shareholders as minority owners.

Amended Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 102 since this paragraph is lacking any specific details. To the extent that an answer is required, the allegation is denied. Admitted that Debtor transferred funds into an account under the name David Wagner at Citizens Bank account # 5596. All such payments were from companies that were wholly-owned by Debtor's immediate family members with no outside shareholders as minority owners.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

104. Allegation: Within the year prior to the Filing Date, Debtor transferred funds into a UBS account in the name of the Debtor, # 3683, from several sources including Hanover Square Capital Partners, Hanover Square Management and WFRE and transferred funds out of that account to or for the benefit of his family members, SSS, Hanover Square Capital, Hanover Square Management, WFRE, SSI, Carol Wagner and to Lawrence.

Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 102 since this paragraph is lacking any specific details. To the extent that an answer is required, the allegation is denied. Admitted that Debtor transferred funds into an account under the name David Wagner at UBS account # 3683. All such payments were from companies that were wholly-owned by Debtor's immediate family members with no outside shareholders as minority owners.

Amended Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 102 since this paragraph is lacking any specific details. To the extent that

an answer is required, the allegation is denied. Admitted that Debtor transferred funds into an account under the name David Wagner at UBS account # 3683. All such payments were from companies that were wholly-owned by Debtor's immediate family members with no outside shareholders as minority owners.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

105. Allegation: In 2018, post filing, Debtor continued to transfer funds into Debtor's UBS account #3683 from Hanover Square Management, Downing Investment Partners and Hanover Group and funds were transferred out of said account by Debtor to Hanover Square Management and to or for the benefit of the Debtor and family members.
> Answer: Admitted that after the filing of the case Debtor transferred funds into an account under his name at UBS, account # 3683. All such payments were from companies that were wholly-owned by Debtor or Debtor's immediate family members with no outside shareholders as minority owners or were made under authorized agreements with other entities.

106. Allegation: Debtor advised the Trustee in 2018, and again in 2019, that Phase 2 Micro Technologies ("Phase 2"), was defunct and he had no relationship with Phase 2 for several years.
> Answer: Denied. The Debtor stated that pHase2 Microtechnologies was defunct and formal notification of this defunct status was received in July 2018. A copy of that communication was provided to the Trustee. Debtor advised the Trustee that he had not served as an officer or Director for several years prior to his filing date

107. On or about March 2018, post filing, funds were deposited into an account at UBS controlled by Debtor under the name of Downing Investment Partners, account #3733, from Phase 2 in the amount of $15,000.
> Answer: Admitted.

108. Allegation: Debtor testified in March 2019, at a continued 341 meeting, that Phase 2 was not defunct and the basis for the 15K payments to him was because Phase 2 had hired him post petition to help "wind down" that business.
> Answer: Denied. This is an incorrect characterization of Debtor's testimony in March 2019 at a continued 341 meeting. Debtor's testimony was that pHase2 micro was not yet defunct in March 2018 but was struggling to avoid insolvency. Debtor did not testify that pHase2 micro had "hired him" to wind down that business. Debtor testified that pHase2 micro had asked him, as an interim representative of Downing Investment Partners, LP, to assist them with restructuring of payments that pHase2 micro owed to Downing Investment Partners, LP. A copy of that payment restructuring effort was provided to the Trustee.

109. Allegation: Debtor Failed to disclose in his Schedules or SOA or Amended Schedules or SOA the existence of Phase 2, that he was employed by or had any interest in Phase 2 at the time of the Filing Date.
> Answer: Denied. Debtor was not employed by pHase2 micro at the time of his filing. Debtor did not have any direct ownership in pHase2 micro at the time of his filing.

110. Allegation: In March 2018, Debtor directed a portion of the funds received from Phase 2 into the Downing Investment Partners SVB account # 3733 and then funds were transferred to, among others, Debtor's Kiderman counsel ($1200), Debtor's Bankruptcy counsel ($2600) and to the Debtor ($4000, $1350 and $200).

Answer: Denied. In March 2018, Debtor directed all of the funds received from pHase2 micro ($15,000) into the Downing Investment Partners account #3733 (at UBS, not at SVB as alleged). To Debtor's knowledge there were no other 2018 funds paid by phase2 micro to any other company that he is, or has been, associated with. Debtor then made various payments and distributions, including payments to himself, as he was authorized to do under his interim arrangements with Downing Investment Partners, LP. Copies of all relevant documents have been provided to the Trustee.

111. Allegation: Debtor thereafter directed the transfer of funds from the Downing Investment Partners account # 3733 in April 2018 to, among others, the Debtor ($4000 and $960).
        Answer: See answer #110.

112. Allegation: Debtor used the Downing Investment Partners bank/Visa card to charge and pay for personal living expenses post petition.
        Answer: Admitted.

        Amended Answer: Admitted only to the extent that such post-petition expenditures were authorized and earned as a portion of amounts payable to Debtor for professional services performed on a contingent basis.

113. Allegation: Within the year prior to the Filing Date, Debtor controlled and transferred funds in and out of the Wagner Family Real Estate account at SVB, account # 3720, with deposits made from several sources including transfers from the Debtor and Hanover Square Capital and transferred funds out to Hanover Square Capital and to or for the benefit of Debtor and his family members and Debtor had use of a credit card and also made ATM withdrawals
        Answer: Admitted that post petition Debtor transferred funds in and out of an account where he had signature authority under the name Wagner Family Real Estate Partners ("WFREP") at account # 3720 (at UBS, not at SVB as alleged). This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners. Payments and transfers were made by Debtor to family members and other parties, as he was authorized and entitled to do.

114. Allegation: Post petition, from January 2018 through May 2018, Debtor controlled an account at UBS, account # 3719 in the name of Hanover Square Management, where funds were deposited from Debtor and other sources and he transferred funds out to or for the benefit of the Debtor and his family members.
        Answer: Admitted that post petition Debtor may have transferred a non-material amount of funds in and out of an account where he had signature authority under the name Hanover Square Management ("HSM") at account # 3720 at UBS. This company was wholly-owned by Debtor and his immediate family members with no outside shareholders as minority owners.

115. Allegation: Post petition, in March 2018, Debtor transferred funds from the Hanover Square Management UBS account # 3719 to pay for the POD on 3/23/18 in the amount of 771.28.
        Answer: Admitted.

116. Allegation: Post Petition, Debtor utilized a Visa card in the name of Hanover Square Management for charging his personal and living expenses.
        Answer: Admitted.

117. Allegation: Post Petition, in March 2018, Debtor transferred funds from the Downing Investment Partners account at SVB # 3733 into Debtor's UBS personal account # 3683 ($4000

and $1350 and $200).

Answer: In March 2018, Debtor directed <u>all</u> of the funds received from pHase2 micro ($15,000) into the Downing Investment Partners account #3733 (at UBS, not at SVB as alleged). To Debtor's knowledge there were no other 2018 funds paid by phase2 micro to any other company that he is, or has been, associated with. Debtor then made various payments and distributions, including payments to himself, as he was authorized to do under his interim arrangements with Downing Investment Partners, LP. Copies of all relevant documents have been provided to the Trustee.

118. Allegation: Debtor thereafter transferred $1000 from his UBS account # 3683 to UBS account # 3719, in the name of Hanover Square Management and also made a payment through a Visa card to Pawtucket Credit Union on 3/21/18 in the amount of $1219 to pay for his daughter's car loan.

Answer: Admitted.

Amended Answer: Admitted.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit, of Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

119. Allegation: Within the year prior to the Filing Date, Debtor transferred funds into an SVB account # 3672 in the name of Debtor's son James Wagner ("James") from Debtor's SVB account #3683 and from accounts in the name of Hanover Square Capital Partners.

Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 119 since this paragraph is lacking any specific details. To the extent that an answer is required, the allegation is denied. Debtor's son, James, does not have any SVB account that Debtor is aware of for Debtor to transfer funds into.

Amended Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 119 since this paragraph is lacking any specific details. To the extent that an answer is required, the allegation is denied. Debtor's son, James, does not have any SVB account that Debtor is aware of for Debtor to transfer funds into.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit, of Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

120. Allegation: Within the year prior to the Filing Date and post petition, Debtor transferred funds into an account at SVB, account # 3671, in the name of Debtor's daughter Meredith Wagner from Debtor's SVB account #3683.

Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 120 since this paragraph is lacking any specific details. To the extent that an answer is required, the allegation is denied. Debtor's daughter, Meredith, does not have any SVB account that Debtor is aware of for Debtor to transfer funds into.

Amended Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 120 since this paragraph is lacking any specific details. To the extent that an answer is required, the allegation is denied. Debtor's daughter, Meredith, does not have any SVB account that Debtor is aware of for Debtor to transfer funds into.

A detailed listing of each individual transaction for any material payments received, or paid to the

benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

121. Allegation: Within the year prior to the Filing Date, Debtor transferred funds into an account under Debtor's control at SVB in the name of 3si Systems, LLC ("3si"), account #5718, from Wagner Family Real Estate, Cliniflow, SSS and Downing Health Technologies.

     Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 121 since this paragraph is lacking any specific details. To the extent that an answer is required, the allegation is denied. Although Debtor has no direct ownership interest in 3si Systems, LLC he did serve as Chairman of that company and may have transferred funds into that company's bank accounts from other company bank accounts in the ordinary course of business within the year prior to the Filing Date. Several other affiliated companies made loans or investments into 3si Systems, LLC.

122. Allegation: Within the year prior to the Filing Date, Debtor transferred funds in and out of the Downing Investment Partners account at SVB, account #5703, to, among others, SSS, Wagner Family Real Estate Partners, Jacqueline Wagner, James Wagner and Carol Wagner.

     Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 122 since this paragraph is lacking any specific details regarding these alleged transactions. To the extent that an answer is required, the allegation is denied. Debtor vigorously denies any assertions that any personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders, including Downing Investment Partners, LP.

     Amended Answer: The defendant is without sufficient information to admit or deny the allegations of paragraph 122 since this paragraph is lacking any specific details regarding these alleged transactions. To the extent that an answer is required, the allegation is denied. Debtor vigorously denies any assertions that any personal compensation, or material expenses, for himself or his family were paid out of any company that involved outside investors as minority shareholders, including Downing Investment Partners, LP.

     A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

123. Allegation: Debtor transferred funds from account #3733 at SVB in the name of Downing Investment Partners, LP to Debtor ($5500) in March 2018.

     Answer: Admitted that in March 2018, Debtor post-petition directed <u>all</u> of the funds received from pHase2 micro ($15,000) into the Downing Investment Partners account #3733. To Debtor's knowledge there were no other 2018 funds paid by phase2 micro to any other company that he is, or has been, associated with. Debtor then made various payments and distributions, including payments to himself, as he was authorized to do under his interim arrangements with Downing Investment Partners, LP. Copies of all relevant documents have been provided to the Trustee.

124. Allegation: Debtor directed payments to be made to PCU for the benefit of a loan in the name of his daughter from Debtor's account at UBS #3683 on September 6, 2017 ($609.50) and post petition on March 2, 2018 ($1219),

     Answer: Admitted.

     Amended Answer: Admitted.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

125. Allegation: Debtor directed payments to be made from his JPMorgan Chase account #4828 to his son James' account at Citizens Bank in the amount of $1000 in April 2017 and to PCU by check #192 dated April 2, 2017 in the amount of $1279.96,
   Answer: Admitted.

   Amended Answer: Admitted.

   A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

126. Allegation: Debtor directed payments from his UBS account # 3683 within 1 year form the Date of Filing to or for the benefit of his family members including Check # 1003 dated 9/6/17 to PCU in the amount of $609.50.
   Answer: Admitted.

   Amended Answer: Admitted.

   A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

127. Allegation: Debtor transferred funds from his UBS account #3683 post petition to EGYC in April 2018 of $300, June 2018 of $100 and in August 2018 of $110,
   Answer: Admitted that post petition the Debtor made the payments in paragraph 127.

128. Allegation: Debtor transferred funds from his UBS account #3683 post petition to PCU in July 2018 in the amount of $203, in August 2018 in the amount of $203 and in October 2018 in the amount of $1900,
   Answer: Admitted that post petition the Debtor made the payments in paragraph 128.

129. Allegation: Debtor transferred funds from Debtor's UBS account #3683 post petition to Hanover Sq. Management SVB account # 3719 in March 2018 in the amount of $1000 and to RI Pods in the amount of $771,
   Answer: Admitted that post petition the Debtor made the payments in paragraph 129.

130. Allegation: Debtor directed payments to be made from the Citizens Bank account #8188 in the name of WFRE to PCU by check #1059 dated April 20, 2017 in the amount of $1279.96.
   Answer: Admitted that the payments stated in paragraph 130 occurred.

   Amended Answer: Admitted that the payments stated in paragraph 130 occurred.

   A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

131. Allegation: Within 12 months prior to the Filing Date, Debtor transferred funds from the

Citizens account of WFRE and regularly used the business' credit card to or for the benefit of himself and family including payments to Santander in the amount of $1972.47, Wells Fargo $944.27 and to East Greenwich Yacht Club ("EGYC") by check # 1058 in the amount of $1032.30.

    Answer: Admitted that the payments stated in paragraph 131 occurred.

    Amended Answer: Admitted that the payments stated in paragraph 131 occurred.

    A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

132. Allegation: Debtor utilized a credit card in the name of Hanover Square Capital Partners from an account at Citizens Bank # 329-8 within the year prior to the filing to pay for household and family living expenses for himself and his family and withdrew cash from the account pursuant to ATM withdrawals.

    Answer: Admitted that the payments stated in paragraph 132 occurred.

    Amended Answer: Admitted that the payments stated in paragraph 132 occurred.

    A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

133. Allegation: Debtor also transferred funds into account # 329-8 from among others, Wagner Family Education Trust, Cliniflow, WFRE, Debtor, ATM, deposits and Downing Acquisition Partners and transferred funds out of the account by wire, interbank transfers and ATM withdrawals to or for the benefit of himself and family members and paid family bills to, among others, Wells Fargo, BMW and Verizon,

    Answer: Admitted that the payments stated in paragraph 133 occurred.

    Amended Answer: Admitted that the payments stated in paragraph 133 occurred.

    A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

134. Allegation: Debtor also transferred funds from this account to the accounts of family members, to Cliniflow, to Downing Health, to Downing Investment Partners, to Downing Med Ventures, to Debtor and to WFRE Partners.

    Answer: Admitted that the payments stated in paragraph 134 occurred.

    Amended Answer: Admitted that the payments stated in paragraph 134 occurred.

    A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

135. Allegation: Debtor transferred funds out of the Hanover Square Capital Partners Account at SVB # 3298 within 12 months of the Filing Date to his son James on April 28, 2017 in the amount of $1150 to his daughter Jacqueline on April 28, 2017 in the amount of $70, and to

himself on August 15, 2017 in the amount of $8800.
    Answer: Admitted that the payments stated in paragraph 135 occurred.

    Amended Answer: Admitted that the payments stated in paragraph 135 occurred.

    A detailed listing of each individual transaction for any material payments received, or paid to the
    benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the
    Trustee and have been included in the Aggregate Filings as attachments.

136. Allegation: Glen Haufler ("Haufler"), after receiving investment solicitation materials from
entities controlled by the Debtor, wired $250,000 into the SVB account # 5703 of Downing
Investment Partners, LP ("DIPLP") on November 25, 2015.
    Answer: Admitted that Glen Haufler wired funds as stated.  Denied as to control.  Glen Haufler
    purchased shares of ownership interests in Downing Investment Partners, LP ("DILP") that were
    being sold by existing owners as specified in the Private Placement Memorandum ("PPM") #15-
    B1106, and was advised that the Offering Partners intended to use these proceeds at their
    unilateral discretion

137. Allegation: On November 25, 2015, Debtor directed a wire transfer for $249,900 from the
DIPLP account #5703 to another account controlled by Debtor in the name of WFRE at Citizens
Bank, account # 8188.
    Answer: Admitted that the Offering Partners requested that the proceeds from their sale were to
    be deposited in an account of WFREP, which is an entity wholly-owned by Debtor and his
    immediate family with no outside shareholders.

138. Allegation: On that same date, Debtor directed a wire transfer for $170,000 from WFRE
account #8188 to another Citizens account under his control in the name of Downing Partners LP
("DPLP") # 727-0.
    Answer: Admitted that the Offering Partners subsequently requested that the proceeds from their
    sale be distributed out of the family-owned entity WFREP and into accounts of various other
    family-owned entities at their unilateral discretion. Admitted as to the remainder.

139. Allegation: On that same date, directed Citizens Bank to issue a cashier's check for
$153,237.85, dated November 25, 2015, from the account of DPLP, payable to Porsche of
Warwick ("Check"), then proceeded to tender the Check for $153,237.85 to Porsche of Warwick
for the purchase of a new Porsche.
    Answer: Admitted.

140. Allegation: Upon information and belief, the Porsche was titled and registered in RI in the
name of one of Debtor's entities and driven by the Debtor and or his family members.
    Answer: Admitted.

141. Allegation: Funds from the accounts of the Debtor and from corporate accounts controlled by
Debtor, pre and post petition were transferred by Debtor to pay for expenses associated with
several vehicles he failed to disclose ownership of or payment for on his Schedules or SOA or
Amended Schedules or Amended SOA, including a payment by DPLLC through SVB account #
5861 for DMV Sale Tax for a 2012 Mercedes in the amount of $3307.36, WFRE Citizens
account #8188 payment of $13,500 to Bald Hill Dodge for a Jeep believed used by Debtor's
children, payment to Entertainment Motor Group of $1850 for vehicle expenses related to a
Volvo believed used by Debtor's children and multiple pre and post-petition payments from
various entities and from the Debtor to Pawtucket Credit Union for payments on a car loan for a

car titled in the name of his daughter.

> Answer: The paragraph is too vague and compound to respond to accurately. To the extent that an answer is required, it is denied.

> Amended Answer: The paragraph is too vague and compound to respond to accurately. To the extent that an answer is required, it is denied.

> A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

142. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made false oaths or account, in that he failed to disclose in the Application To Waive Filing Fee ("Doc # 6"), Schedules and Statement of Affairs ("Doc # 15") and the Amended Schedules and Amended Statement of Affairs ("Doc # 106") that he had use of and control of the funds in the many bank accounts in the names of several entities and used the funds in those accounts to or for the benefit of himself and his family members and for payment of his and his family's expenses.

> Answer: Denied.

> Amended Answer: Denied.

> A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor and his family for the year prior to the Filing Date have been provided to the Trustee and have been included in the Aggregate Filings as attachments.

143. No question #143.

144. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account, in that he failed to accurately disclose the full extent of his income from employment or from operation of his businesses from 2016 through the Filing Date.

> Answer: Denied.

> Amended Answer: Denied.

> The Aggregate Filings accurately reflect Debtor's negative reported personal income in 2017 and 2016, as well as providing further information on Debtor's gross cash receipts from businesses for both years before deducting business expenses and business losses which resulted in negative reported personal income.  A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

145. Allegation: Debtor's actual income for 2016 through the Filing Date was far greater than reported in view of his use of funds from the corporate entities under his control and evidenced by what he actually reported as income on his 2016 and 2017 Federal tax returns.

> Answer: Denied.

> Amended Answer: Denied.

The Aggregate Filings accurately reflect Debtor's negative reported personal income in 2017 and 2016, as well as providing further information on Debtor's gross cash receipts from businesses for both years before deducting business expenses and business losses which resulted in negative reported personal income.  A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

146. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account, by failing to accurately disclose in Doc 15 and Doc 106, the nature, names, taxpayer IDs, locations, and beginning and end dates of all the businesses in which he was an officer, director, partner or managing executive or partner in a partnership.
   Answer: Denied.

   Amended Answer: Denied.

   Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtor's indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

   A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

147. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account by failing to disclose in Doc 15 and Doc 106 with particularity the full extent of all financial accounts under his control at Citizens Bank, JP Morgan Chase, SVB and USB.
   Answer: Denied.

   Amended Answer: Denied.

   Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtor's indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company

assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

148. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account on Doc 15 and Doc 106 by failing to accurately answer the questions in the Schedule G by not disclosing he was a member of EGYC.
    Answer: Denied.

    Amended Answer: Denied.

    Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtor's indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

    A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

149. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account when he falsely answered under oath several questions in Doc 6 including he was unemployed, had no income, has only one account and $3 in that account, did not expect his income or his family's income would increase by 10% over the next 6 months, had monthly expenses of $8140.16, had no one who regularly paid any of his monthly expenses, had no other real estate and no other assets.
    Answer: Denied.

    Amended Answer: Denied.

    Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtor's indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company

assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

150. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account to the Trustee when he stated that Phase 2, Telephase Holdings and Telecardia were defunct, with no corporate existence, had no ongoing operations and he did not recall having any connection with them for at least 4-5 years.
        Answer: Denied.

151. No question #151.

152. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account to the Trustee when he stated and testified that business computers were moved by him into the POD and were there as of the Filing Date.
        Answer: Denied.

153. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account on Doc 15 when he failed to accurately answer questions numbered 17 (Deposits of money), 25 (Disclosure of trusts), 35 (Any financial assets not already listed), 37 (Any legal or equitable interest in any business-related property), 44 (Any business related property not already listed), 55 (Any other property of any kind not already listed), He listed many unsecured creditors and then later objected to their claims as not being his creditors, Doc 15 and 106 Statement of Affairs question 7 (payments to insiders within one year of the Filing Date), 8 (any payments or transfers of property on account of a debt that benefitted an insider), 4 (business income from 2016 to the Filing Date), 5 (any other income from 2016 through the Filing Date), 8 (transfers within 1 year prior to the Filing Date on account of a debt that benefitted an insider), 13 (gifts of more than $600/person made within 2 years before the Filing Date), 18 (transfers of property within 2 years of the Filing Date), 20 (any bank accounts for your benefit or in your name closed moved or transferred), 23 (hold or control any property someone else owns), 27 (Businesses Debtor had interest in within 4 years of the Filing Date).
        Answer: Denied.

        Amended Answer: Denied.  The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures on all of the allegations contained in Paragraph 153.

154. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account on Doc 106 when he failed to accurately answer Amended Schedule questions numbered 35,37,44,53,57,59,61, and 62 and Amended SOA questions numbered 4,5,7,8,13,18,23 and 27.
        Answer: Denied.

        Amended Answer: Denied.  The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures on all of the allegations contained in Paragraph 154.

155. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account, in that he testified at 341 meetings that business computers were moved

by him from a West Warwick office into a POD in North Kingston in 2017 when he had actually directed the computers be transferred to Cliniflow in Connecticut where he permitted them to be sold within the year prior to the Filing Date.

Answer: Denied.

156. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account by failing to disclose on the Filing Date his use and control of funds in the names of third parties.

Answer: Denied.

Amended Answer: Denied.

Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtor's indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

157. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account by failing to disclose the continued corporate existence and operations of various entities he owned or controlled on the Filing Date.

Answer: Denied.

Amended Answer: Denied.

Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtor's indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor or his family for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in

Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

158. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account by failing to disclose on the Filing Date his many transfers of assets to or for the benefit of his family members within the year before, the two years before, and through the Filing Date.

 Answer: Denied.

 Amended Answer: Denied.

 Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtor's indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

 A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor or his family for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

159. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account by failing to fully disclose on the Filing Date the continued existence and operation of Phase 2 and his relationship with Phase 2.

 Answer: Denied.

 Amended Answer: Denied.

 Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtor's indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

 A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor or his family for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in

Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

160. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account by failing to disclose on the Filing Date Debtor's control over, transfer and use of funds in the various business and personal accounts for the benefit of himself and his family members.

Answer: Denied.

Amended Answer: Denied.

Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtor's indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor or his family for the years prior to the Filing Date have been provided to the Trustee; have been included in the Aggregate Filings as attachments; and have been included in Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

161. Allegation: The Debtor knowingly and fraudulently, in or in connection with this case, made a false oath or account by failing to disclose on the Filing Date his ownership of and or payment for vehicles not titled in his name and his payment of related expenses for himself and his family members through corporations under his control.

Answer: Denied.

Amended Answer: Denied.

Notwithstanding the foregoing, Debtor's understood his only meaningful association with operating entities at the time of his filing on January 17, 2018 was limited to three entities: Downing Partners, LLC (Debtor 100% ownership); Wagner Family Real Estate Partners, LP (Debtor 15% ownership); and Hanover Square Capital Partners, LP (Debtor 25% ownership). The Aggregate Filings, with all detailed attachments, provide all necessary and appropriate disclosures.  These detailed disclosures include extensive information about all of Debtor's indirect ownership interests and company affiliations.  This extensive information includes, for each company affiliated with: amount of Debtor's indirect ownership interest; any company bank accounts; amount of balance in any company bank account on the Filing Date; any company assets; estimated value of any company assets on the Filing Date; and relevant notes or comments for any company where Debtor has a direct or indirect ownership interest.

A detailed listing of each individual transaction for any material payments received, or paid to the benefit of, Debtor or his family for the years prior to the Filing Date have been provided to the

Trustee; have been included in the Aggregate Filings as attachments; and have been included in Amended tax returns that have been filed (copies of Amended tax returns provided to the Trustee).

162. Allegation: By virtue of the false oaths and omissions, false information set forth on Doc 6, Doc 15 and Doc 160, false representations and false testimony at 341 meetings, the Debtor's discharge should be denied under Bankruptcy 727 (a)(4).
    Answer: Denied.

163. Allegation: The Plaintiff reserves her right to supplement or amend this complaint to include other claims and or causes of actions under Code 727 based upon her receipt and review of additional information.
    Answer: Denied.

WHEREFORE, the Defendant respectfully requests that the Court deny all relief requested by the Plaintiff and dismiss this case with prejudice and grant such other and further relief for Defendant as the Court deems just.

David W. Wagner
By his attorneys,

/s/RUSSELL D. RASKIN
BC #1880
RASKIN & BERMAN
116 East Manning Street
Providence, RI 02906
(401) 421-1363
russell@raskinberman.com

AFFIRMATIVE DEFENSES

NOW COMES the Defendant, by and through counsel and serve the following Affirmative Defenses:

FIRST AFFIRMATIVE DEFENSE

As a first, separate and affirmative defense to Plaintiff's Complaint, Defendant asserts that the Plaintiffs have failed to state claim upon which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

As a second, separate and affirmative defense to Plaintiff's Complaint, Defendant states that the results of prior court proceedings between the parties are inadmissible and inapplicable to the case herein and are not entitled to any preclusive effect in this proceeding.

## THIRD AFFIRMATIVE DEFENSE

As a third, separate and affirmative defense to Plaintiff's Complaint, Defendant asserts that all actions taken by the defendant were reasonable and prudent.

## FOURTH AFFIRMATIVE DEFENSE

As a fourth, separate and affirmative defense to Plaintiff's Complaint, Defendant asserts that the Plaintiff has failed to state essential elements for one or more of its causes of actions in that the Plaintiff have failed to itemize and specifically allege facts to support the allegations in the Complaint.

## FIFTH AFFIRMATIVE DEFENSE

As a fifth, separate and affirmative defense to Plaintiff's Complaint, Defendant requests that the court grant leave to amend this answer to allow additional defenses once additional information is discovered that will allow any additional defenses to be known by the defendant.


David W. Wagner
By his attorneys,

/s/RUSSELL D. RASKIN
BC #1880
RASKIN & BERMAN
116 East Manning Street
Providence, RI 02906
(401) 421-1363
russell@raskinberman.com


## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2019, I electronically filed the within First Amended Answer with the Clerk of the Bankruptcy Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

- Charles A. Pisaturo    Charlie@pisaturolaw.com, Jenn@pisaturolaw.necoxmail.com
- Peter J. Furness    peter@rhf-lawri.com, kristin@rhf-lawri.com;kristen@rhf-lawri.com

and I hereby certify that I have mailed by United States Postal Service, postage pre-paid, the document electronically filed with the court to the following non CM/ECF participants:

David W. Wagner
55 Downing Street
East Greenwich, RI 02818

/s/ESTHER RASKIN